Nott, J.,
delivered the opinion of the court:
This is an action brought to recover $8,200 upon the charter-party of the steamer Eockland.
There is a preliminary objection in this caseto the admission •of testimony. The claimants called as a witness a Mr. Getty, who testified to a conversation between himself, the agent of the claimants, and Acting Quartermaster General Clary, the agent of the defendants. In this conversation Mr. Getty ascribes to Colonel Clary declarations expressive of an intent to hold the claimant’s vessel against the will of her owners, and to use this property, in possession of the government under a valid contract, in a manner unlawful, arbitrary, and tyrannical.
Colonel Clary was called by the defendants to contradict this testimony. Several questions were propounded, made up in part of Mr. Getty’s testimony, in part of the inferences of .counsel. The claimants objected to the questions, but the counsel of the defendants adhered to them. Colonel Clary decisively replied in the negative, but the questions covered more than the declarations imputed to him by the former witness. It would seem to the court, as Getty’s testimony was then 'in print and before the commissioner, that nothing could have been easier than to have read it to the witness and asked him whether he said so or not; and it would seem that an opportunity should have been afforded to Colonel Clary to contradict what were virtually charges against his own good conduct as an officer. If no objection had been taken by the claimants, the court would consider Colonel Clary’s answer as a substantial denial. But the counsel for the claimant promptly objected, and to the form of the question. The counsel for the defendants having adhered to it, leaves the court no alternative. The question violates one of the most familiar of the rules for the examination of witnesses, and the defendants having neglected their opportunity to correct the question, the objection must be sustained and the testimony be stricken out. — (2 Phillips’ Ev.,. p. 405.)
There is but one controverted fact in the case. The steamer *180 was chartered by an assistant quartermaster, under the charter-party set forth in the petition. In April, 18G3, a reduction of the charter rate was ordered by the Quartermaster General, and notice was given to the owners. Their agent, by their direction, went to Washington to remonstrate, and procure the steamer’s discharge. This is his statement of what transpired:
“ I protested against the right of the department' to make an arbitrary reduction without the consent of the owners. • Colonel Clary replied that the government had the right; that they had these boats, and when they said, we had no say in the matter; that the government would take the property and fix a price; they claimed the right to do this matter in his own way; and that the owners had no rights they could enforce. I replied to him that in mercantile usage it was customary for parties, in making bargains for the hire or charter of a vessel, when they agreed to pay so much per month, or so much per voyage, they were bound to carry out their contract, and pay the amount agreed upon in good faith. If they did not desire the vessel longer, they were either to discharge the property and make a new bargain, or to dispense with the use of the property altogether. I claimed that between the government and individuals the government was bound to act in the same way that individuals were required to act in carrying out contracts in good faith. Colonel Clary took the ground that the government was not bound to act in the same way as individuals; that they had the right to dictate their own termsj that they had the property in their possession, and would keep it from that time forward.”
The court regards this demand for the vessel’s discharge to have been argumentative, and neither clear, positive, nor unequivocal. Upon the evidence we find as matter of fact that the owners of the steamer allowed her to remain in the service after receiving notice of the reduction, but did protest against and object to the reduction, and did insist upon the original compensation fixed by the charter-party.
The counsel of the claimant have, to a certain extent, anticipated the finding, and have argued as a principle of law that the owners must assent to the reduction or the defendants must discharge the vessel from the service; that so long as she remains in service under the charter, and so long as it remains unreformed in terms, so long the charter rate must prevail. *181 The question, is uot open to discussion in tbis court, for it was ■decided by a full bench, and unanimously in Clyde’s Case, at the beginning of the present term. The principle of the decision may be stated thus:
The inferior agents of the government, such as assistant quartermasters, have no right to retain a vessel in the service at her original charter rate after the receipt of the Quartermaster General’s order to reduce it, unless the owner assent to the reduction; and the owner, with knowledge of the Quartermaster General’s order, cannot leave his vessel in the service except as subject to its terms. " In such cases it is for the defendants to bring knowledge of the Quartermaster General’s order home to the claimant j and it is for the claimant to show that he sought to take his vessel out of the service and was refused a discharge. If he voluntarily left his vessel in the service after knowledge of the Quartermaster General’s order, he left her subject to the Quartermaster General’s restrictions.
The judgment of the court is that the petition be dismissed.
Casey, Ch. J.:
Although the questions put to Colonel Clary were not, as they should have been, in the words of Getty, the witness he was called to contradict, and so far as his evidence is merely responsive to the question, it should be rejected. But I think there are other portions of Colonel Clary’s testimony that do pointedly and positively contradict the main points of Getty’s evidence. And those portions of the testimony should be admitted and considered.